Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin E. Brenner (Cal. Bar No. 333540)
martin@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE GREBEN, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff*,<br><br>v.<br><br>CINMAR, LLC and FRONTGATE MARKETING, INC.,<br><br>     *Defendants*. | Case No. 2:24-cv-10140<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.    Introduction. .............................................................................................. 1

II.   Parties. ...................................................................................................... 4

III.  Jurisdiction and Venue. ........................................................................... 5

IV.  Facts. ........................................................................................................ 5

     A.    Defendants' fake prices and fake discounts. ................................. 5

     B.    Defendants' advertisements are unfair, deceptive, and unlawful. .................. 11

     C.    Defendants' advertisements harm consumers. ............................. 13

     D.    Plaintiff was misled by Defendants' misrepresentations. ................... 14

     E.    Defendants breached their contract with and warranties to Ms. Greben and the putative class. ........................................... 17

     F.    No adequate remedy at law. ........................................................ 18

V.   Class action allegations. ........................................................................ 18

VI.  Claims. .................................................................................................... 20

    First Cause of Action: Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 & 17501 et. seq. ................................ 20

    Second Cause of Action: Violation of California's Consumer Legal Remedies Act. .......................................................................... 22

    Third Cause of Action: Violation of California's Unfair Competition Law ............ 24

    Fourth Cause of Action: Breach of Contract ........................................ 26

    Fifth Cause of Action: Breach of Express Warranty ............................. 27

    Sixth Cause of Action: Quasi-Contract/Unjust Enrichment .................. 28

    Seventh Cause of Action: Negligent Misrepresentation ....................... 29

    Eighth Cause of Action: Intentional Misrepresentation ........................ 30

VII. Relief. ..................................................................................................... 31

VIII. Demand for Jury Trial. ......................................................................... 31

## I.     Introduction.

1.     Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.     While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.     Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.     Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.     Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7.  So, as numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8.  Defendants Cinmar, LLC d/b/a Frontgate and Frontgate Marketing, Inc. ("Defendants" or "Frontgate") sell and market furniture and home décor products online through the Frontgate brand and website, www.frontgate.com ("Frontgate Products" or "Products").

9.  On their website, Defendants list purported regular prices and advertise purported discounts from those listed regular prices. These include time-limited discounts offering "up to X% off" and "X% off" sitewide. Defendants also advertise that their Products have a lower discount price as compared to a higher, regular price shown in grey and/or strikethrough font. Examples are shown below:





10. But in fact, Defendants' discounts are routinely available. As a result, everything about Defendants' price and purported discount advertising is false. The regular prices Defendants advertise are not actually Defendants' regular prices, because Defendants' Products are routinely available for less than that. The purported discounts

Defendants advertise are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts time-limited and limited to a certain period of time (for example, Presidents' Day).

11. As described in greater detail below, Ms. Greben bought a Product from Defendants from their website, www.frontgate.com. When Ms. Greben made her purchase, Defendants advertised that a sale was going on, and so Defendants represented that the Product Ms. Greben purchased was being offered at a steep discount from the purported regular price that Defendants advertised. And based on Defendants' representations, Ms. Greben believed that she was purchasing a Product whose regular price and market value were the purported regular price that Defendants advertised, and that she was receiving a substantial discount. These reasonable beliefs are what caused Ms. Greben to buy from Defendants when she did.

12. The representations Ms. Greben relied on, however, were not true. The purported regular price was not the true regular price that Defendants sell the Product for, the purported discount was not a true discount, and the discount was ongoing—not time-limited. Had Defendants been truthful, Ms. Greben and other consumers like her would not have purchased the Products, or would have paid less for them.

13. Plaintiff brings this case for herself and the other customers who purchased Frontgate Products.

## II.  Parties.

14. Plaintiff Melanie Greben is domiciled in Oak Park, California.

15. The proposed class includes citizens of every state.

16. Defendant Cinmar, LLC is a Delaware limited liability company with its principal place of business in West Chester, Ohio.

17. Defendant Frontgate Marketing, Inc. is a Delaware corporation with its principal place of business in West Chester, Ohio.

### III. Jurisdiction and Venue.

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

19. The Court has personal jurisdiction over Defendants because Defendants sold Frontgate Products to consumers in California, including to Plaintiff.

20. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants sold Frontgate Products to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Defendants' sale to Plaintiff.

### IV. Facts.

#### A. Defendants' fake prices and fake discounts.

21. Defendants Cinmar, LLC d/b/a Frontgate and Frontgate Marketing, Inc. distribute, market, and sell furniture and home décor products. Defendants sell their Products directly to consumers through their website, www.frontgate.com.

22. On their website, Defendants create the false impression that their Products' regular prices are higher than they truly are.

23. On their website, Defendants advertise steep discounts on their Products. These discounts consistently offer "X%" or "up to X%" off the listed regular prices Defendants advertise. Defendants also state that the discounts are time-limited or limited to a certain period of time (for example, Presidents' Day). And they advertise these discounts extensively: in a large banner image on their homepage; on the products listing pages; on the individual product pages for each Product; and during checkout. Example screenshots are provided on the following pages:

1
2
3
4
5
6
7
8



*Captured April 28, 2022*

9
10
11
12
13
14
15

*Captured August 1, 2022*

16
17
18
19
20
21
22
23
24
25
26
27



*Captured November 18, 2022*

28

1

2

3

4

5

6

7



8

*Captured March 10, 2023*

9

10

11

12

13

14

15

16

17



18

*Captured June 2, 2023*

19

20

21

22

23

24

25

26



27

*Captured October 4, 2023*

28



*Captured February 22, 2024*



*Captured April 11, 2024*



*Captured May 16, 2024*



*Captured May 16, 2024*

24.     To confirm that Defendants' Products are consistently sold at a discount off of their purported regular prices, Plaintiff's counsel performed an investigation of Defendants' advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1]  This investigation revealed that Defendants' Products have been regularly available at allegedly discounted prices for years.  Plaintiff's counsel gathered 49 randomly selected screenshots of Defendants' homepage from 2023.  Of those, 45 (over 90%) showed that Defendants were running a sitewide sale of at least up to 15% off.  Plaintiff's counsel also gathered all available screenshots on the Internet Archive of Defendants' homepage from August 22, 2023, to November 20, 2023 (the 90-day period immediately preceding Plaintiff's purchase).  The homepage was available for 41 days during this period.  The screenshots show that Defendants were constantly running discounts on its Products.  In every single available screenshot of Defendants' website during this period, Defendants were running a sale.  In 40 out of the 41 screenshots, Defendants were running a sitewide sale of at least up to 20% off.  The one other screenshot showed a sale for 30% off any single item on Defendants' website.  Thus, Plaintiff's counsel's investigation revealed that Defendants' Products are consistently available for prices lower than Defendants' advertised regular prices.

25.     Using these tactics, Defendants lead reasonable consumers to believe that they will get a discount on the Products they are purchasing if they make purchases during a limited time promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

26.     Based on Defendants' advertisements, reasonable consumers reasonably believe that the prices displayed in "strikethrough font" (*e.g.*, "$449.00") are Defendants'

---

[1] The Internet archive, available at archive.org, is a library that archives web pages. https://archive.org/about.

1  regular prices and former prices (that is, the price at which the goods were actually

2  offered for sale on Defendants' website before the limited-time offer went into effect).

3  In other words, reasonable consumers reasonably believe that the listed strikethrough

4  regular prices Defendants advertise represent the amount that consumers formerly had to

5  pay on Defendants' website for Defendants' goods, before the limited-time sale began.

6  Said differently, reasonable consumers reasonably believe that, prior to the supposedly

7  time-limited sale, consumers buying from Defendants on their website had to pay the

8  regular price to get the item and did not have the opportunity to get a discount from that

9  regular price.

10     27.     Reasonable consumers also reasonably believe that the listed regular prices

11  Defendants advertise represent the true market value of the Products, and are the

12  prevailing prices for those Products; and that they are receiving reductions from those

13  listed regular prices in the amounts advertised.  In truth, however, Defendants

14  consistently offer discounts off the purported regular prices they advertise.  As a result,

15  everything about Defendants' price and purported discount advertising is false.  The

16  regular prices Defendants advertise are not actually Defendants' regular or former prices,

17  or, as discussed below, the prevailing prices for the Products Defendants sell.  And, the

18  listed regular prices do not represent the true market value for the Products, because

19  Defendants' Products are consistently available for less than that on Defendants' website,

20  and customers did not have to formerly pay that amount to get those items.  The

21  purported discounts Defendants advertise are not the true discount the customer is

22  receiving, and are often not a discount at all.  Nor are the purported discounts limited in

23  time—quite the opposite, they are regularly available.

24     **B.   Defendants' advertisements are unfair, deceptive, and unlawful.**

25     28.     Section 17500 of California's False Advertising Law prohibits businesses

26  from making statements they know or should know to be untrue or misleading.  Cal. Bus.

27  & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on

28  sale, when it actually is not.

29.    Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

30.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

31.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

32.    And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

33.    Here, as described in detail above, Defendants make untrue and misleading statements about their prices.  Defendants advertise regular prices that are not their true regular prices, or their former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendants advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendants made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts.  And Defendants engaged in unlawful, unfair, and deceptive business practices.

### C.     Defendants' advertisements harm consumers.

34.     Based on Defendants' advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendants usually sell their Products and that these are former prices that Defendants sold their Products at before the time-limited discount was introduced.

35.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

36.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

37.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

38.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

---

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).
[4] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

39.     Thus, Defendants' advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendants' advertisements artificially increase consumer demand for Defendants' Products.  This puts upward pressure on the prices that Defendants can charge for their Products.  As a result, Defendants can charge a price premium for their Products, that they would not be able to charge absent the misrepresentations described above.  So, due to Defendants' misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**D.     Plaintiff was misled by Defendants' misrepresentations.**

40.     On November 20, 2023, Ms. Greben purchased a Pascal 6 Light Chandelier from Defendants' website, www.frontgate.com.  She made this purchase while living in Oak Park, California.  On this day, Defendants' website advertised an "Up to 50% Off Sitewide" sale:



*Captured November 20, 2023*

41.     The website represented that the Pascal 6 Light Chandelier had a regular price, but was on sale for a discounted price of $419.98 plus tax and shipping costs. Defendants represented that Ms. Greben was receiving a discount for the item that she ordered.  Ms. Greben's email confirmation represented that Ms. Greben's discounted price was $419.98 plus tax and shipping.

42.     Defendants represented that the Pascal 6 Light Chandelier had a regular price significantly higher than the discounted price Plaintiff was receiving and that Plaintiff was receiving a steep discount on the Product.  Plaintiff saw and relied on these representations in deciding to make her purchase.

43.     As highlighted above, Defendants' sales are always prominently advertised on its website, www.frontgate.com.  Plaintiff saw and relied on this advertising in deciding to make her purchase.

44.     The website homepage routinely advertises the sales with a banner near the top of the page.  On the day of Plaintiff's purchase, Defendants' website advertised an "Up to 50% Off Sitewide" sale (shown above).  Plaintiff saw and relied on this banner when she made her purchase on Defendants' website.  For example, she saw and relied on the banner on Defendants' homepage when she viewed the website on November 20, 2023, to make her purchase, and reasonably believed that by purchasing during the sale she would receive the advertised discount.

45.     Before making her purchase, Ms. Greben viewed the Pascal 6 Light Chandelier product page on www.frontgate.com and saw that Defendants represented that the item was on sale compared to its regular price.  The product page displayed a purported regular price in strikethrough font next to the purported discount price of $419.98.  The product page represented that the price was a "Limited Time Offer." Plaintiff understood these representations to mean that Defendants were offering a limited-time sale during which the Product was being sold at a discounted price below the item's regular price.  Plaintiff saw and relied on these representations when she made her purchase.

46.     And Defendants' Shopping Cart and Checkout pages make the same misrepresentations.  These pages showed the purported regular price in strikethrough font, the purported discount price, an estimated total (before shipping and tax), the total, and the amount the customer purportedly saved because of the purported sale.  Ms. Greben saw and relied on these misrepresentations when she made her purchase.

47.     Based on Defendants' representations described and shown above, Ms. Greben reasonably understood that Defendants regularly sold the Product she was purchasing at the published regular price, that this regular price was the market value of the Product that she was buying, and that she was receiving the advertised discount as compared to the regular price. She would not have made the purchase if she had known that the Product was not discounted as advertised, and that she was not receiving the advertised discount.

48.     In reality, as explained above, Defendants' Products, including the Product that Ms. Greben purchased, are regularly available at discounted prices off the purported regular prices. In other words, Defendants did not regularly sell the Product Ms. Greben purchased at the purported regular price, and the Product was not discounted as advertised. Plus, the sales are not time-limited—Defendants' Products are routinely on sale. Because Defendants' Products, including the Pascal 6 Light Chandelier purchased by Plaintiff, are regularly available at a discounted price off the purported regular price, the purported regular price is not in fact the regular price of the Products. Instead, because the Products are regularly available at a discounted price, the regular price is less than the purported regular price.

49.     Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendants again in the future if she could feel sure that Defendants' regular prices accurately reflected Defendants' former prices and the market value of the Products, and that their discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendants' regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendants' website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendants' advertising in the future, and so cannot purchase Products she would like to purchase.

**E.     Defendants breached their contract with and warranties to Ms. Greben and the putative class.**

50.     When Ms. Greben, and other members of the putative class, purchased and paid for the Frontgate Products that they bought as described above, they accepted offers that Defendants made, and thus, a contract was formed each time that they made purchases.  Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.  For example, Defendants offered to sell Ms. Greben a Pascal 6 Light Chandelier having a regular price and market value equal to the purported regular price in strikethrough font advertised on Defendants' website at the time of Ms. Greben's purchase, and to provide that product at the purported discount price advertised on the website.

51.     Defendants' website lists the purported market value of the items that Defendants promised to provide.  Defendants agreed to provide a discount equal to the difference between the regular prices, and the purported discount prices paid by Ms. Greben and putative class members.  Defendants also warranted that the regular price and market value of the Product Ms. Greben purchased was the advertised list price and warranted that Ms. Greben was receiving a specific discount on that Product (for example "15% off").

52.     The regular price and market value of the items Ms. Greben and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

53.     Ms. Greben and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

54.     Defendants breached their contracts by failing to provide Ms. Greben and other members of the putative class with Products that have a regular price and market

Class Action Complaint                    17                    Case No. 2:24-cv-10140

value equal to the regular price displayed, and by failing to provide the discount they promised. In other words, instead of providing Products with regular price and market value X at discounted price Y, Defendants provided Products with lower regular prices and market values, depriving Ms. Greben and class members of the promised discount. Defendants also breached warranties for the same reasons.

**F.    No adequate remedy at law.**

55.    Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

56.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

57.    In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendants' representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

58.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

**V.    Class action allegations.**

59.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more Frontgate Products at a purported discount on Defendants' website.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Frontgate Products at a purported discount on Defendants' website.

60. The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

61. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

62. Class members can be identified through Defendants' sales records and public notice.

### *Predominance of Common Questions*

63. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendants made false or misleading statements of fact in their advertisements;

(2) whether Defendants violated California's consumer protection statutes;

(3) whether Defendants committed a breach of contract;

Class Action Complaint                    19                    Case No. 2:24-cv-10140

(4) whether Defendants committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

64.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased a Frontgate Product advertised at a discount from Defendants.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

65.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### First Cause of Action:

### Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 & 17501 et. seq.

### (By Plaintiff and the California Subclass)

66.     Plaintiff incorporates each and every factual allegation set forth above.

67.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

68.     Defendants have violated sections 17500 and 17501 of the Business and Professions Code.

69.     Defendants have violated, and continue to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

70.     As alleged more fully above, Defendants advertise former prices along with discounts.  Defendants do this, for example, by crossing out a higher price (*e.g.*, ~~$449.00~~) and displaying it next to a lower, discounted price.  Reasonable consumers would

understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendants charged before the time-limited discount went into effect.

71.     The prices advertised by Defendants are not Defendants' regular prices.  In fact, those prices are not Defendants' regular prices (i.e., the price you usually have to pay to get the Product in question) because there is routinely a heavily-advertised promotion ongoing entitling consumers to a discount.  Moreover, for the same reasons, those prices were not the former prices of the Products.  Accordingly, Defendants' statements about the former prices of their Products, and their statements about their discounts from those former prices, were untrue and misleading.  In addition, Defendants' statements that their discounts are time-limited or specific to certain time periods (such as Memorial Day or Presidents' Day) are false and misleading too.

72.     In addition, Defendants have violated, and continue to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising.  As explained above, Defendants' advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendants' former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendants' advertisements do not indicate whether or when the purported former prices were offered at all.

73.     Defendants' misrepresentations were intended to induce reliance, and, as specifically identified above, Plaintiff and purported class members saw, read, and reasonably relied on the statements when purchasing Frontgate Products.  Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

74.     In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Frontgate Products.

75.     Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

76.     Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Frontgate Products if they had known the truth, (b) they overpaid for the Products because the Frontgate Products were sold at a price premium due to the misrepresentation; and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

## Second Cause of Action:

### Violation of California's Consumer Legal Remedies Act
### (by Plaintiff and the California Subclass)

77.     Plaintiff incorporates each and every factual allegation set forth above.

78.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

79.     Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

80.     Plaintiff and the subclass have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

81.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

82.     As alleged more fully above, Defendants made and disseminated untrue and misleading statements of facts in their advertisements to subclass members.  Defendants did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

83.     Defendants violated, and continue to violate, section 1770 of the California Civil Code.

84.     Defendants violated, and continue to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendants represent that the value of their Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

85.     Defendants violated, and continue to violate, section 1770(a)(9) of the California Civil Code.  Defendants violate this by advertising their Products as being offered at a discount, when in fact Defendants do not intend to sell the Products at a discount.

86.     And Defendants violated, and continue to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on their website, including by (1) misrepresenting the regular price of Products on their website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (*e.g.*, "Presidents' Day Sale," when in fact the sale is ongoing and not limited to Presidents' Day).

87.     Defendants' representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

88.     Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Frontgate Products. Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

89.     In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Frontgate Products.

90.     Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

91. Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Frontgate Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

92. Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Greben, on behalf of herself and all other members of the subclass, seeks injunctive relief.

93. CLRA § 1782 NOTICE. On November 7, 2024, a CLRA demand letter was sent to Defendants' headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendants do not have a California headquarters. If Defendants do not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA, including reasonable attorneys' fees and punitive damages.

94. A CLRA venue declaration is attached.

### Third Cause of Action:
### Violation of California's Unfair Competition Law
### (by Plaintiff and the California Subclass)

95. Plaintiff incorporates each and every factual allegation set forth above.

96. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

97. Defendants have violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

98.    Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.  In addition, Defendants engaged in unlawful conduct by violating the FTCA.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements.  15 U.S.C. § 45(a)(1).  As the FTC's regulations make clear, Defendants' false pricing schemes violate the FTCA.  16 C.F.R. § 233.1, § 233.2.

*The Deceptive Prong*

99.    As alleged in detail above, Defendants' representations that their Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

100.    Defendants' representations were misleading to Plaintiff and other reasonable consumers.

101.    Plaintiff relied upon Defendants' misleading representations and omissions, as detailed above.

*The Unfair Prong*

102.    As alleged in detail above, Defendants committed "unfair" acts by falsely advertising that their Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

103.    Defendants violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

104.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendants' conduct.  There is no public utility to misrepresenting the price of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

105. Plaintiff and the subclass could not have reasonably avoided this injury. As alleged above, Defendants' representations were deceptive to reasonable consumers like Plaintiff.

106. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

107. For all prongs, Defendants' representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Frontgate Products. Defendants' representations were a substantial factor in Plaintiff's purchase decision.

108. In addition, subclass-wide reliance can be inferred because Defendants' representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Frontgate Products.

109. Defendants' representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

110. Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Frontgate Products if they had known that they were not discounted, (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

**Fourth Cause of Action:**

**Breach of Contract**

**(by Plaintiff and the Nationwide Class)**

111. Plaintiff incorporates each and every factual allegation set forth above.

112. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

113.    Plaintiff and class members entered into contracts with Defendants when they placed orders to purchase Products on Defendants' website.

114.    The contracts provided that Plaintiff and class members would pay Defendants for the Products purchased.

115.    The contracts further required that Defendants provide Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website.  They also required that Defendants provide Plaintiff and class members with a discount equal to the difference between the price paid, and the regular prices advertised.  These were specific and material terms of the contract.

116.    The specific discounts were a specific and material term of each contract.

117.    Plaintiff and class members paid Defendants for the Products they purchased, and satisfied all other conditions of their contracts.

118.    Defendants breached their contracts with Plaintiff and class members by failing to provide Products that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on their website, and by failing to provide the promised discount.  Defendants did not provide the discount that they had promised.

119.    Plaintiff provided Defendants with notice of this breach of contract, by mailing a notice letter to Defendants' headquarters and registered agent on November 7, 2024.

120.    As a direct and proximate result of Defendants' breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial**.**

### Fifth Cause of Action:

### Breach of Express Warranty

### (by Plaintiff and the California Subclass)

121.    Plaintiff incorporates each and every factual allegation set forth above.

122.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

123.    Defendants, as the manufacturer, marketer, distributor, supplier, and/or seller of the Frontgate Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendants' website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

124.    This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

125.    In fact, the Frontgate Products' stated market value was not the prevailing market value.  Thus, the warranty was breached.

126.    Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters and registered agent on November 7, 2024.

127.    Plaintiff and the subclass were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Frontgate Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

### Sixth Cause of Action:
### Quasi-Contract/Unjust Enrichment
### (by Plaintiff and the Nationwide Class)

128.    Plaintiff incorporates each and every factual allegation in paragraphs 1-49, 55-65 above.

129.    Plaintiff brings this cause of action in the alternative to her Breach of Contract claim (Claim IV) on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

130.   As alleged in detail above, Defendants' false and misleading advertising caused Plaintiff and the class to purchase Frontgate Products and to pay a price premium for these Products.

131.   In this way, Defendants received a direct and unjust benefit at Plaintiff's expense.

132.   (In the alternative only), due to Defendants' misrepresentations, their contracts with Plaintiff and other class members are voidable.

133.   Plaintiff and the class seek restitution, and in the alternative, rescission.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiff and the California Subclass)**

134.   Plaintiff incorporates each and every factual allegation set forth above.

135.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

136.   As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

137.   These representations were false.

138.   When Defendants made these misrepresentations, they knew or should have known that they were false.  Defendants had no reasonable grounds for believing that these representations were true when made.

139.   Defendants intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

140.   In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Frontgate Products.

141.   Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

142.    Plaintiff and subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Frontgate Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(by Plaintiff and the California Subclass)**

143.    Plaintiff incorporates each and every factual allegation set forth above.

144.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

145.    As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

146.    These representations were false.

147.    When Defendants made these misrepresentations, they knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

148.    Defendants intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

149.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Frontgate Products.

150.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

151.    Plaintiff and subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Frontgate Products if

they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

**VII. Relief.**

152. Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**VIII. Demand for Jury Trial.**

153. Plaintiff demands the right to a jury trial on all claims so triable.


Dated: November 22, 2024                    Respectfully submitted,

                                            By: */s/ Christin Cho*
                                            Christin Cho (Cal. Bar No. 238173)
                                            christin@dovel.com
                                            Simon Franzini (Cal. Bar No. 287631)
                                            simon@dovel.com
                                            Martin E. Brenner (Cal. Bar No. 333540)
                                            martin@dovel.com
                                            Grace Bennett (Cal. Bar No. 345948)
                                            grace@dovel.com
                                            DOVEL & LUNER, LLP

201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*